UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DOUGLAS LEE HECKAMAN,

                Petitioner,

v.

CHRIS KING,

                Respondent.

_____/

Case No. 1:24-cv-835

Honorable Jane M. Beckering

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Douglas Lee Heckaman is incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. Following a jury trial in the Ingham County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), in violation of Michigan Comp. Laws § 750.520b(2)(b). The court sentenced Petitioner to concurrent prison terms of 25 years to 37 years, 6 months.

On August 13, 2024, Petitioner, through counsel, filed his habeas corpus petition raising the following ground for relief:

> I.      [Petitioner was] prejudiced by his trial counsel's failure to present evidence that the complainant had a motive to fabricate her sexual assault allegations.

(Br. Supp. § 2254 Pet., ECF No. 1-1, PageID.7.) Respondent contends that Petitioner's ground for relief is meritless. (ECF No. 6.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

**Discussion**

I.       **Factual Allegations**

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as

follows:

> From near the end of 2013 until 2015, complainant, who was eight years old at the time, and her slightly older sister, were placed in the care of the children's great-aunt, Nancy Huddleston, [Petitioner's] partner. The children were returned to the care of their mother, Rebecca Hammon, who, in 2018, became concerned regarding complainant's self-harming behavior of cutting herself. Around this time, complainant disclosed to her sister and a cousin that [Petitioner] had sexually assaulted her while she and her sister were placed with Huddleston and [Petitioner]. Later, complainant's grandmother overheard complainant's sister and cousin speak about the allegation. At a meeting with a school counselor and Hammon, complainant referenced the abuse. Her sister disclosed the allegations to Hammon at home around May 15, 2018. Complainant testified that while she lived with [Petitioner], a large man, he digitally penetrated her labia and had her touch his penis multiple times.

*People v. Heckaman*, No. 354888, 2022 WL 1591312, at *1 (Mich. Ct. App. May 19, 2022).

Jury selection for Petitioner's trial occurred on December 16, 2019. (Trial Tr. I, ECF No.

7-4.) Over the course of two days, the jury heard testimony from numerous witnesses, including

the complainant's grandmother and mother, the complainant, the complainant's sister, Detective

Kelly Bowden, two expert witnesses in the field of child sexual abuse, Petitioner's sister, Nancy

Huddleston, and Petitioner himself. (Trial Tr. II & III, ECF Nos. 7-5, 7-6.) On December 20, 2019,

the jury returned a guilty verdict. (Trial Tr. IV, ECF No. 7-7.) Petitioner appeared before the trial

court for sentencing on January 29, 2020. (Sentencing Tr., ECF No. 7-8.)

Petitioner subsequently moved for a new trial on the basis that trial counsel provided

ineffective assistance of counsel. *See Heckaman*, 2022 WL 1591312, at *1. Alternatively,

Petitioner requested that the court conduct an evidentiary hearing pursuant to *People v. Ginther*,

212 N.W.2d 922 (1973), to develop his claim of ineffective assistance. *See id.* The trial court

2

conducted a hearing regarding the motion on March 15, 2021, and denied Petitioner's motion for a new trial and for a *Ginther* hearing. (Mot. Hr'g Tr., ECF No. 7-9.)

Petitioner, through counsel, appealed his convictions and sentences to the Michigan Court of Appeals. On appeal, Petitioner argued that trial counsel was ineffective for "failing to offer evidence that complainant's mother had been arrested before the complainant accused [Petitioner] of sexual abuse." *Heckaman*, 2022 WL 1591312, at *2. Petitioner also asserted that counsel was deficient for failing to "object to the testimony of plaintiff's expert, Thomas Cottrell." *Id.* at *5. On May 19, 2022, the court of appeals affirmed Petitioner's convictions and sentences. *Id.* at *1.

Petitioner, through counsel, subsequently filed an application for leave to appeal to the Michigan Supreme Court. On November 30, 2022, in lieu of granting leave to appeal, the supreme court vacated the court of appeals' Judgment with respect to Petitioner's claim of ineffective assistance regarding counsel's failure to offer evidence regarding complainant's mother's arrest. *See People v. Heckaman*, 981 N.W.2d 495 (Mich. 2022). The supreme court remanded the matter for further consideration of the claim. *Id.* The Michigan Supreme Court explained that although the Michigan Court of Appeals "cited the correct standard for assessing prejudice under *Strickland v. Washington*, . . . it failed to apply that standard" because "[t]he defendant was not required to show that, but for counsel's deficient performance, he *would have been acquitted.*'" *Id.* Instead, the Michigan Supreme Court explained, "prejudice is established where a defendant shows that 'but for counsel's deficient performance, there is *a reasonable probability* that the outcome would have been different.'" *Id.*

On remand, the Michigan Court of Appeals concluded that defense counsel's failure to introduce evidence of the complainant's mother's arrest constituted performance that fell below an objective standard of reasonableness. *People v. Heckaman*, No. 354888, 2023 WL 3668108, at

*1–2 (Mich. Ct. App. May 25, 2023). However, the Michigan Court of Appeals—applying the prejudice standard as advised by the Michigan Supreme Court—concluded that Petitioner had failed to establish the requisite prejudice. The Michigan Court of Appeals panel reasoned:

> The evidence of complainant's mother's arrest . . . could not establish a temporal or logical connection between the complainant's accusation of defendant's sexual abuse and defendant's contention that she did so to prevent being removed from her mother's custody and returned to defendant's home. Upon further consideration on remand, we are not persuaded to change our analysis and conclusions:
>
>> The leap from Hammon's arrest to the conclusion that the complainant felt compelled to lie requires speculation and is devoid of direct evidentiary linkage. Nothing in the record establishes that the complainant even had knowledge of Hammon's arrest when she disclosed the sexual abuse. The record also does not indicate that Child Protective Services (CPS) even intimated to complainant that she would be removed from Hammon's care. To establish a causal connection, the jury would have had to assume that CPS intended immediately to remove complainant from Hammon and place her again with defendant and his partner, and that the latter had agreed to such an arrangement. But no evidence supports such assumptions. We are not convinced that the jury would have concluded that the complainant manufactured her allegations of sexual abuse because of her mother's arrest. [*Heckaman*, unpub. op. at 6.]
>
> Moreover, the record reflects that the jury heard the complainant's testimony regarding the process through which she disclosed the abuse, that she first told her sister and cousin and asked them to keep it secret, but the grandmother overheard the sister and cousin's later discussion, and the abuse came out in relation to the school intervention because of the complainant's self-cutting. The complainant testified that she wanted to keep the abuse secret. Had the jury been presented evidence of the complainant's mother's arrest, to make a difference in the outcome, the jury would have had to disregard or discount the complainant's testimony. Further, the record establishes that the prosecution presented substantial evidence from which the jury could reasonably find defendant guilty beyond a reasonable doubt of sexually abusing the complainant. Therefore, we remain unpersuaded that, had the jury been presented evidence of the mother's arrest, there is a reasonable probability that the outcome would have been different.

*Id.* at *2. Petitioner filed an application for leave to appeal to the Michigan Supreme Court. That court denied leave on October 3, 2023. *People v. Heckaman*, 995 N.W.2d 320 (Mich. 2023). This § 2254 petition followed.

4

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Discussion

Petitioner's sole ground for relief is that he was prejudiced by trial counsel's failure to present evidence that the complainant had a motive to fabricate her sexual assault allegations. (Br. Supp. § 2254 Pet., ECF No. 1-1, PageID.7.) Specifically, Petitioner avers that the complainant fabricated the allegations "so she would not be removed from her mother again and placed with [Petitioner]." (*Id.*, PageID.17.) Petitioner indicates that the complainant's mother was arrested for possession of methamphetamine on March 15, 2018, shortly before the complainant's "allegations in this case first came to light." (*Id.*, PageID.18–19.) The complainant's mother "pleaded guilty and was sentenced on March 11, 2019, several months before the trial in [Petitioner's] case." (*Id.*, PageID.19.)

### A.        Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double

deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA" (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised this ground for relief on direct appeal, and as set forth above, the Michigan Court of Appeals addressed it twice. The court of appeals' May 25, 2023, Opinion after remand by the Michigan Supreme Court constitutes the "last reasoned decision" on the merits of Petitioner's claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). In that Opinion, the court of appeals set forth the following standard of review for Petitioner's ineffective assistance claim:

> In our previous opinion, we summarized the applicable law as follows:

> > A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. U.S. Const., Am. VI; Const. 1963, art. 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v. Cline*, 276 Mich. App. 634, 637; 741 N.W.2d 563 (2007). The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v. Rodgers*, 248 Mich. App. 702, 714; 645 N.W.2d 294 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant must establish counsel's deficient performance, and that the "deficient performance prejudiced the defense." *People v. Taylor*, 275 Mich. App. 177, 186; 737 N.W.2d 790 (2007) (quotation marks and citation omitted). Defense counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v. Jordan*, 275 Mich. App. 659, 667; 739 N.W.2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id.* "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v. Trakhtenberg*, 493 Mich. 38, 51; 826 N.W.2d 136 (2012) (citations omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that

counsel's performance was born from a sound trial strategy." *Id.* at 52 (citation omitted).

*Heckaman*, 2023 WL 3668108, at *1. Although the court of appeals cited state law, the standard is identical to the one set forth in *Strickland*. Moreover, the cases cited in *Trakhtenberg* identify *Strickland* as the source of the standard. *See People v. Pickens*, 521 N.W.2d 797, 802 (Mich. 1994)

The court of appeals' application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the court of appeals applied the correct standard, Petitioner can only overcome the deference afforded state court decisions if the determination regarding Petitioner's

10

ineffective assistance claim—as set forth in the Factual Allegations section above—is an unreasonable application of *Strickland*. 28 U.S.C. 2254(d).

Petitioner attempts to demonstrate unreasonableness by arguing that it is possible that the presentation of evidence regarding complainant's mother's arrest could have cast sufficient doubt on the complainant's credibility that a juror may have been swayed away from finding Petitioner guilty. It would certainly be ***possible*** for a juror to infer that, because the arrest preceded the disclosure, there was some causal connection. But the court of appeals panel reasoned that other facts before the jury—for example, the indirect manner of disclosure and the absence of any corroborating evidence that the complainant was so motivated—rendered that causal connection speculative at best. Put differently, based on the entire record, the panel concluded that it was not reasonably probable that a juror would have adopted the urged inference.

Moreover, the question is not whether this Court might conclude that a juror may have been persuaded by that inference or whether some courts might reach that conclusion. To prevail, Petitioner must demonstrate "that every fairminded jurist would disagree" with the state court's determination. *Mays v. Hines*, 592 U.S. 385, 392 (2021) (citing *Knowles v. Mirzayance*, 556 U.S. 111 (2009)). This Court concludes that the Michigan Court of Appeals resolution of Petitioner's challenge was a reasonable determination of the facts on this record and a reasonable application of the *Strickland* standard. Accordingly, Petitioner is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).

Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Petitioner's claim under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claim. *Id.*

The Court finds that reasonable jurists could conclude that this Court's denial of Petitioner's claim was debatable or wrong. Therefore, the Court will grant Petitioner a certificate of appealability. Moreover, for the same reason, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a Judgment denying the petition and an order granting a certificate of appealability.

Dated:      July 1, 2026                    /s/ Jane M. Beckering
                                            Jane M. Beckering
                                            United States District Judge

12